**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TONOPAH SOLAR ENERGY, LLC, [1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-10060 (___) |

**DECLARATION OF NEIL GUPTA IN SUPPORT OF THE MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO (A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDER; (III) MODIFYING THE AUTOMATIC; STAY; (IV) SCHEDULING A FINAL HEARING AND (V) RELATED RELIEF**

I, Neil Gupta, hereby declare, under penalty of perjury, that the following is true to the best of my knowledge, information, and belief:

1. I submit this declaration (the "Declaration")[2] in support of the Debtor's DIP Motion,[3] which among other things seeks authority for the Debtor to obtain postpetition financing pursuant to a senior secured, first-lien and super-priority and priming debtor-in-possession delayed draw term loan facility in the aggregate principal amount of up to $10 million (the "DIP Facility") and grant relevant liens and provide superpriority administrative expense claims.

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Tonopah Solar Energy, LLC (1316). The Debtor's headquarters is located at 11 Gabbs Pole Line Road, Box 1071, Tonopah, NV 89049.

[2] Certain disclosures in this Declaration relate to matters within the personal knowledge of other professionals at SSG and are based on information provided by them.

[3] *See Motion of the Debtor for Entry of Interim and Final Orders (I) Authorizing Debtor to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral; (II) Granting Adequate Protection to Prepetition Lender; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "DIP Motion"), filed contemporaneously with this Declaration. Capitalized terms used but not defined in this Declaration have the meaning given to them in the DIP Motion or the DIP Term Sheet, as applicable.

**<u>MY BACKGROUND AND QUALIFICATIONS</u>**

2. I am a Managing Director of SSG Capital Advisors, LLC ("<u>SSG Capital</u>"), a leading independent boutique investment bank. SSG Advisors, LLC ("<u>SSG</u>"), an affiliate of SSG Capital, is the proposed investment banker to the Debtor. I am duly authorized to make this Declaration on behalf of SSG.

3. I have 15 years of experience in the restructuring industry and have closed over 100 transactions. I have extensive experience marketing companies or their assets for sale, including experience marketing companies in distress and debtors in bankruptcy cases, raising capital for special situation transactions, and restructuring companies' balance sheets both in court and out of court.

4. SSG is an internationally recognized special situations investment banking firm with its office outside of Philadelphia. Since its founding, SSG has completed over 500 investment banking assignments. SSG's professionals have expertise in mergers and acquisitions, private placements, financial restructurings, valuations, licensing transactions, and financial advisory services. Moreover, SSG has substantial expertise advising troubled companies, including in connection with distressed sales. SSG's professionals have extensive experience in complex financial restructurings. SSG has served as an investment banker for debtors and other parties in well over 100 bankruptcy cases in the Third Circuit.

5. Based on my work with the Debtor, I have become generally familiar with the financial and operational aspects of the Debtor's business. I submit this Declaration in support of my view that the DIP Facility: (a) is the best and presently only available postpetition financing option for the Debtor; and (b) contains reasonable and appropriate financial terms and conditions under the circumstances.

6. Except as otherwise indicated, all facts or opinions set forth in this Declaration are based on my personal knowledge, my discussions with the Debtor's advisors, professionals, board members or members of the SSG team, my review of relevant documents and information concerning the Debtor's financial affairs and going-concern sale initiatives, or my experience. I am not being specifically compensated for this testimony other than through payments received by SSG as a professional whose retention the Debtor will seek in an application to be filed with this Court.

7. I am over the age of eighteen (18) years and am authorized to submit this Declaration on behalf of SSG and the Debtor. If I were called upon to testify, I could and would competently testify to the facts set forth in this Declaration.

**THE DEBTOR'S NEED FOR DIP FINANCING**

8. Prior the Petition Date, the Debtor engaged SSG to act as the Debtor's investment banker. The SSG team has worked closely with the Debtor's management and other advisors and has become knowledgeable and familiar with the Debtor's capital structure, liquidity needs, and business operations. The SSG team has also marketed the proposed DIP Facility to potential alternative third-party lenders.

9. Based on discussions with the Debtor and its other advisors, my experience in restructuring matters, and my familiarity with the Debtor, I believe the Debtor requires immediate access to the DIP Facility. Without it, I do not believe the Debtor will be able to continue to operate the Power Plant in the ordinary course, proceed with the sale process, or otherwise fund this chapter 11 case, causing immediate and irreparable harm to the value of the Debtor and its estate. Moreover, based on my experience, sufficient postpetition financing is necessary to send a strong signal to interested buyers and the market more generally that the chapter 11 case is

well-funded and that the Debtor would be able to continue operating the Power Plant in the ordinary course during the chapter 11 case.

10. Accordingly, I understand that the Debtor and its counsel actively negotiated with the DIP Lender and its counsel the terms of a DIP financing facility for the Debtor, which culminated in the proposed DIP Facility described in the DIP Motion. Those negotiations included, among other things, the terms of the Debtor's consensual use of cash collateral and the proposed DIP financing to fund the Debtor's operations and the administration of the chapter 11 case, including a chapter 11 plan. Through the efforts of the Debtor and its advisors, the negotiations resulted in improvements to the terms of the DIP Facility, including, among others, upsizing the DIP Facility to support the Debtor's ongoing operations, improving the flexibility of the milestones, extending the maturity date, and adding flexibility in variance testing. Accordingly, I believe the Debtor negotiated the best possible financing terms under the circumstances.

11. The proposed DIP Facility is expected to provide the Debtor with access to an amount of capital that the Debtor, in consultation with its advisors, believes will allow it to fund its operations and pursue its marketing and sale process. In October 2025, SSG solicited ten third-party lenders seeking alternative financing. I understand that substantially all of the Debtor's assets are subject to the Prepetition Lender's liens and the Prepetition Lender indicated that it would not consent to a third-party providing DIP financing on a priming basis. Therefore, any third-party DIP financing would either have to be provided on a junior basis or otherwise be subject to a priming contest with the Debtor's prepetition secured lender. The prospective financing sources indicated concerns regarding a priming fight with the Prepetition Lender. Moreover, the economic terms of any DIP financing would be significantly more expensive than the terms of the

proposed DIP Facility. As a result, none of the prospective financing sources was willing to provide DIP financing under either of these circumstances.

12. In my opinion, the proposed DIP Facility will provide the Debtor with enough liquidity to continue operating the Power Plant, satisfying other operational needs during the Chapter 11 case, and furthering the sale process for the Debtor's assets that began prior to the Petition Date. I believe the timeline and total funding under the DIP Facility—will facilitate a chapter 11 case, including a sale of the Power Plant. Accordingly, I believe the proposed DIP Facility should be approved.

**PROPOSED DIP FACILITY**

13. As set forth more fully in the DIP Motion, the proposed DIP Facility consists of a senior secured, first-lien and super-priority and priming debtor-in-possession delayed draw term loan facility in the aggregate principal amount of up to $10 million, with $5 million initial draw available upon entry of the Interim Order. The proposed DIP Facility also contains certain case milestones relating to the sale process and chapter 11 plan confirmation process. Based on my extensive experience with debtor-in-possession financing transactions as well as my involvement in the efforts to secure postpetition financing for the Debtor, I believe the proposed DIP Facility is very favorable to the Debtor.

14. First, the proposed DIP Facility is expected to provide the Debtor with access to an amount of capital that the Debtor, in consultation with its advisors, believes will adequately fund the postpetition sale process, ordinary course operations, and the administration of the chapter 11 case through a plan process.

15. Second, the terms of the proposed DIP Facility are the result of active negotiations between the Debtor and the DIP Lender, both of whom were represented by separate counsel. My

view on the arm's-length nature of this transaction is not changed by my understanding that the DIP Lender is an affiliate of the Debtor. Through the efforts of the Debtor and its advisors, these negotiations resulted in improvements to the terms of the DIP Facility, including (among others) increasing the DIP Facility's size to support the Debtor's ongoing operations, improving the flexibility of the milestones, extending the maturity date, and adding flexibility in variance testing. Further, the Debor negotiated favorable interest and default rates and the DIP Facility does not contain fees (other than customary professional fees and expenses). Accordingly, I believe the Debtor negotiated the best possible financing terms, and the proposed DIP Facility will best position the Debtor to facilitate a sale of the Power Plant and confirm a chapter 11 plan.

## CONCLUSION

16. For the reasons stated above, it is my view that the DIP Facility represents the best—and only—postpetition financing available to the Debtor under the circumstances. I believe that the principal economic terms proposed under the DIP Facility were negotiated in good faith, at arm's-length are consistent with terms of DIP financings in comparable circumstances, and, in fact, are quite favorable for the Debtor. Accordingly, I believe that the proposed DIP Facility is in the best interests of the Debtor and its estate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 21, 2026

By: /s/ Neil Gupta
Neil Gupta
Managing Director
SSG Advisors, LLC

*Proposed Investment Banker to the Debtor*