## **EXHIBIT 1**

**Agreement**

*Execution Version*

This SETTLEMENT AGREEMENT AND MUTUAL RELEASE (the "Agreement"), dated as of March 16, 2026, is entered into by and between debtor Tonopah Solar Energy, LLC ("*TSE*" or "*Debtor*"), on the one hand, and Mark Manski ("*Manski*"), on the other.  TSE and Manski are referred to in this Agreement collectively as to the "*Parties*."

**Recitals[1]**

    A.  Prior to the commencement of the 2020 Case (as defined below), TSE engaged Manski to serve as a manager of TSE.

    B.  On July 30, 2020, TSE filed a chapter 11 petition commencing its original bankruptcy case (the "*2020 Case*").

    C.  On September 8, 2020, TSE filed an amended chapter 11 plan in the 2020 Case (the "*2020 Plan*").

    D.  On December 9, 2020, the Delaware bankruptcy court entered an order confirming the 2020 Plan.

    E.  Section 10.7 of the 2020 Plan provided, among other things, that TSE's "*Indemnification Obligations*" (as defined in the 2020 Plan) "to a current or former director, officer, manager or employee who was employed by the Debtor in such capacity on or after the Petition Date (including, for the avoidance of doubt, the members of the board of directors, board of managers or equivalent body of the Debtor at any time) shall be deemed assumed effective as of the Effective Date. Each Indemnification Obligation that is deemed assumed pursuant to the Plan shall (a) remain in full force and effect, (b) not be modified, reduced, discharged, impaired or otherwise affected in any way, (c) be deemed and treated as an executory contract pursuant to sections 365 and 1123 of the Bankruptcy Code regardless of whether or not proofs of claim have been filed with respect to such obligations and (d) survive Unimpaired (as defined by the Bankruptcy Code) and unaffected irrespective of whether such indemnification is owed for an act or event occurring before, on or after the Petition Date."

    F.  Section 10.7 of the 2020 Plan further provided that TSE would establish an escrow, with cash equal to $2,500,000 (the "*Indemnification Escrow Account*"), so that to the extent TSE's Indemnification Obligations were not satisfied by TSE or by any applicable D&O liability insurance policy(ies), the escrow funds may be utilized for such indemnification obligations.

    G.  On December 23, 2020, the Parties, along with Citibank, N.A., as escrow agent, and certain other former managers of the TSE entered into an escrow agreement, as contemplated by

---

[1] These Recitals are provided for background purposes only and are not to be construed as an admission by any Party.

the 2020 Plan (the "***Escrow Agreement***"), thus creating and funding the Indemnification Escrow Account.

H.

I.

J.  The Escrow Agreement provides for the release of escrowed funds pursuant to one or more Joint Release Instructions, a Unanimous Joint Release Instruction, and/or upon receipt by the escrow agent of a Final Determination (each as defined in the Escrow Agreement).  Up to $625,000 may be released by way of Joint Release Instructions executed by TSE and any single indemnitee, or if not executed by TSE, by an order of the Bankruptcy Court; releases of more than $625,000 to a single indemnitee require a Joint Instruction agreed to by all of the indemnitee and either TSE or as directed by the Bankruptcy Court (or other court of competent jurisdiction).

K.  In addition to the indemnification obligations of TSE, any applicable D&O insurance, and the Escrow Indemnification Account, TSE also prepaid an additional legal fee retainer on behalf of Manski.  Specifically, in 2021, TSE funded $150,000.00 to the law firm of McDermott Will & Schulte LLP ("***MWS***") (then Schulte Roth & Zabel, LLP), counsel for Manski.  As of January 31, 2026, MWS represented that $18,260.84 of the retainer remained.

L.  On January 21, 2026, TSE filed a second chapter 11 case (the "***2026 Case***"), through which it seeks to sell its assets and resolve other outstanding assets and liabilities, including with respect to (i) any contingent indemnification obligations to Manski and the other indemnitees under the Escrow Agreement and (ii) the Parties' respective rights related to the Escrow Agreement, the 2020 Plan, and related retainers.

M.  Manski is not a current insider of TSE. Since June 2024, Manski has been engaged by TSE as a consultant, under that certain Consultant Agreement (the "***Existing Consulting Agreement***"). Manski is not a manager or officer of TSE nor is he an insider of any affiliate of TSE.

N. On February 4, 2026, TSE filed its bankruptcy schedules in the 2026 Case. Manski was listed on the schedules as a creditor with respect to TSE's ongoing indemnification obligations. Manski's claim was scheduled as contingent and unliquidated and in an unknown amount.

## AGREEMENT

For and in consideration of the covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to the terms of the settlement in this Agreement, subject to the approval of the Bankruptcy Court.

1. <u>Bankruptcy Court Approval</u>. This Agreement is subject to entry of a final order of the Bankruptcy Court approving this Agreement under Federal Rule of Bankruptcy 9019. The date that an order is entered approving this Agreement is referred to as the "***Agreement Approval Date***."

2. <u>9019 Motion</u>.  Not more than three business days after execution of this Agreement, the Debtor will submit this Agreement for approval to the Bankruptcy Court by motion filed under Bankruptcy Rule 9019 (the "***Rule 9019 Motion***"). The Debtor will notice the Rule 9019 Motion in accordance with applicable bankruptcy law, including any orders of the Bankruptcy Court limiting notice. Manski will support approval of the Rule 9019 Motion, including by appearing and testifying at any hearing on the Rule 9019 Motion if reasonably requested.

3. <u>Escrow Release</u>. On the Agreement Approval Date, provided that the order approving the Rule 9019 Motion has not been stayed, the Debtor and Manski will execute a Joint Release Instruction (as defined in the Escrow Agreement), providing for the immediate release of $625,000 of escrowed funds, of which (a) $192,000.00 will be distributed to Manski as set forth below (the "***Manski Funds***") as advancement of indemnified funds and (b) $433,000.00 will be distributed to the Debtor (the "***TSE Funds***").  $100,000 of the Manski Funds will be paid to Manski directly, and $92,000 of the Manski Funds will be paid to MWS as an additional retainer.  Manski may, at any time after distribution and in his sole discretion, elect to receive any and all retainers held by MWS on Manski's behalf.  The TSE Funds will be refunded to the Debtor, subject to the pre- and post-petition liens of TSE's secured lender.  For avoidance of doubt TSE has no rights at any time, including in the future to the Manski Funds, whether they are ever used for indemnification.

4. <u>D&O Insurance Rights Reserved</u>.  Each of Manski and the Debtor will retain all rights under and to any applicable D&O liability insurance policy.

5. <u>Future Indemnification/Bankruptcy Claims</u>.  On the Settlement Effective Date, the Debtor will no longer have or owe any advancement or indemnification obligations to Manski. Accordingly, Manski will not have a claim in the 2026 Case and, therefore, will not be entitled to vote on any chapter 11 plan proposed in the 2026 Case.

6. <u>Release</u>. The Parties on their own behalf and on behalf of their respective heirs, personal representatives, successors, assigns, partners, directors, officers, stockholders, members, managers, general managers, owners, trustees, affiliates, employees, agents, and attorneys, past or present (collectively, the "***Releasing Parties***"), hereby release and forever discharge the other Parties and their respective heirs, personal representatives, successors, assigns, partners, directors, officers, stockholders, members, managers, general managers, owners, trustees, affiliates, employees, agents, and attorneys, past or present (collectively, the ("***Released Parties***"), from any and all claims, damages, causes of action, actions, demands, suits, rights, costs and expenses (including attorneys' fees), known or unknown, choate or inchoate, of whatever kind or nature, whether direct, indirect, derivative, vicarious or subrogated in nature, which the Releasing parties have, had or could have had as of the date of execution of this Agreement.  The Released Parties are intended third-party beneficiaries of this release, and may enforce this release.  Nothing in this paragraph affects the ability of any Party to enforce the rights and obligations specifically provided for in this Agreement or in the New Consulting Agreement (as defined below).

7. <u>Escrow Agreement</u>.  Other than with respect to Manski, the Escrow Agreement will remain in place subject to its terms and the terms of the 2020 Plan.

8. <u>New Consulting Agreement</u>.  Manski has separately agreed to enter into a new consulting agreement with ACS Industrial Activities, Inc. ("***ACSIA***"), a non-debtor affiliate of the Debtor (the "***New Consulting Agreement***").  Upon execution of the New Consulting Agreement, the Existing Consulting Agreement will be terminated.  Under the New Consulting Agreement, ACSIA will pay Manski an initial up-front payment of $90,000, and then $15,000 per month quarterly in advance on such terms as agreed to between Manski and ACSIA. The New Consulting Agreement will expire on December 31, 2027, subject to the rights of either ACSIA or Manski to terminate on 30-days' advance notice to the other party.

9. <u>Entire Agreement; Amendment; Assigns.</u> All agreements, covenants, representations and warranties, express and implied, oral and written, of the Parties to this Agreement concerning its subject matter are contained herein. The Parties represent and acknowledge that in executing this Agreement, they do not rely and have not relied upon any other agreement, covenant, representation, statement or warranty, express or implied, oral or written, whether made by the Parties, or any other person or entity, with regard to the subject matter, basis or effect of this Agreement. All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants

and warranties concerning the subject matter of this Agreement are merged herein. This is an integrated agreement. Any amendment to this Agreement must be in writing and signed by each of the Parties. This Agreement is for the benefit of, and shall be binding upon, the successors and assigns of the Parties. Neither Party may assign this Agreement without prior written consent of the other Party.

10. <u>Consultation with Attorneys.</u> The Parties each acknowledge and warrant that they have had sufficient time to review and consider this Agreement, and they have had the opportunity to consult with their legal counsel regarding the advisability of entering into this Agreement, including the releases provided herein.

11. <u>Governing Law.</u> This Agreement, and any claim arising out of, relating to, referencing, or concerning this Agreement, will be governed by Delaware law without regard to conflict-of-law principles. The Parties agree that the Agreement, and all matters related to its enforcement, will be subject to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware, or, if that court finds that it lacks subject-matter jurisdiction, to the exclusive jurisdiction of the courts of the State of Delaware, and the Parties agree to waive any objections to the jurisdiction of those courts with respect to such claims on the grounds of personal jurisdiction, *forum non conveniens*, venue, or similar grounds.

12. <u>No Waiver.</u> No waiver of any of the provisions of this Agreement will be deemed to constitute a waiver of any of the other provisions hereof, whether or not similar, nor will such waiver constitute a continuing waiver. The failure of any of the Parties to insist upon strict adherence to any term of this Agreement on any occasion shall not be considered a waiver thereof or deprive any of the Parties of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.

13. <u>Interpretation; Severability.</u> If any provision of this Agreement should require interpretation, the Parties agree there shall be no presumption for or against either Party based on drafting or preparation. If any provision of this Agreement is deemed illegal, void or non-enforceable, the Parties agree that all remaining provisions of this Agreement will remain in full force and effect to the maximum extent feasible.

14. <u>Not Admissible in Evidence.</u> This Agreement and the contents hereof will not be admissible as evidence in any litigation except to enforce this Agreement and will not be deemed to be an admission by any Party under this Agreement.

15. <u>Authorization.</u> Each Party represents and warrants that the persons signing this Agreement on its behalf are fully authorized to do so.

16. <u>Execution; Counterparts.</u> This Agreement may be executed in counterparts, which, taken together, will constitute one and the same Agreement. This Agreement may be signed and delivered by means of a facsimile or electronic transmission in portable document format (.pdf), and shall be treated in all respects as an original.

17. <u>Construction.</u> Words in the singular number in this Agreement shall be construed to include the plural, and vice versa, unless the context requires otherwise. The words "include" or

*Execution Version*

"including" when used in this Agreement shall mean "including, but not limited to." The word "or" shall not be exclusive.

18. <u>Headings.</u> The headings in this Agreement are provided solely for convenience and organization. They do not alter or affect the meaning of this Agreement.

19. <u>Notices.</u> All notices required or permitted hereunder shall be provided to the Party to be notified, in writing by both overnight delivery and email, both directly and to the Party's counsel as specified below, unless informed of a change of address in writing:

> <u>To:</u>  TSE
> c/o DLA Piper LLP (US)
> Attn: Aaron S. Applebaum, Esq.
> 1201 North Market Street, Suite 2100
> Wilmington, DE 19801
> Email:  aaron.applebaum@us.dlapiper.com
>
> -and-
>
> Debevoise & Plimpton LLP
> Attn: Rachel Ehrlich Albanese, Esq.
> 66 Hudson Boulevard
> New York, NY 10001
> Email:  ralbanese@debevoise.com
>
> <u>To:</u> Manski
>
> Mr. Mark Manski
> ████████████████
> ████████████
> █████████████████████
>
> <u>With a copy to:</u>
> McDermott Will & Schulte LLP
> Attn: Douglas I. Koff
> 919 Third Avenue
> New York, NY 10022
> Email: dkoff@mcdermottlaw.com

**[*Signature pages follow*]**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first written above.

Mark Manski

By: _____

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

Tonopah Solar Energy, LLC

By:_____

Name: Yale Scott Bogen

Title: Chief Restructuring Officer