

Sean M. Brennecke
500 Delaware Avenue, Suite 700
Wilmington, Delaware 19801
Sean.Brennecke@lewisbrisbois.com
Direct: 302.985.6009

May 29, 2026

**VIA E-FILING AND HAND DELIVERY**

The Honorable J. Kate Stickles
United States Bankruptcy Court Judge
824 N. Market Street, 5th Floor
Wilmington, Delaware 19801

      Re:     *In re Tonopah Solar Energy, LLC*, C.A. No. 26-10060 (JKS) – Discovery Dispute

Dear Judge Stickles:

I write as counsel to CMB Infrastructure Investment Group IX, LP, CMB Infrastructure Investment Group XI, LP and CMB Export, LLC (collectively, "CMB") in accordance with the Court's Order of May 27 regarding a discovery dispute between CMB and the Debtor, Tonopah Solar Energy, LLC ("Tonopah" or the "Debtor").

This dispute arises from Debtor's efforts to prejudice CMB by weaponizing an accommodation CMB made at the Debtor's request.  Specifically, despite failing to produce the documents called for in CMB's Requests for Production of Documents to Debtor Tonopah Solar Energy, LLC (the "Requests"), the Debtor seized on a misunderstanding and a de minimis delay in providing responses and asks this Court to effectively (i) deny CMB's Motion for Entry of an Order Appointing a Chapter 11 Trustee (the "Trustee Motion") [Dkt. 256], (ii) prejudice CMB's ability to protect its rights as a creditor, and (iii) ignore valid and significant concerns regarding the Combined Disclosure Statement and Chapter 11 Plan (the "Plan").  As explained below, this extraordinary relief is unwarranted and the Court should reject it, order the Debtor to produce the documents called for in the Amended Requests (defined below), and require the Debtor to defend its actions and satisfy its burden of proof to confirm the Plan with evidence—not with "gotcha litigation" tactics.

### A. Debtor refuses to produce relevant documents.

It is blackletter law that the Debtor bears the burden of establishing that the Plan complies with each of the requirements of section 1129 of the Bankruptcy Code, including that the "plan has been proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3), *In re Exide Techs.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003) (denying debtor's plan).  To justify the Plan's overly broad releases the Debtor relies on the reports of a Special Committee of the Tonopah Board of Directors, whose legal counsel determined that the Debtor "does not hold any material claims or

ARIZONA • CALIFORNIA • COLORADO • CONNECTICUT • DELAWARE • FLORIDA • GEORGIA • ILLINOIS • INDIANA • KANSAS • KENTUCKY • LOUISIANA

MARYLAND • MASSACHUSETTS • MINNESOTA • MISSISSIPPI • MISSOURI • NEVADA • NEW JERSEY • NEW MEXICO • NEW YORK • NORTH CAROLINA

OHIO • OREGON • PENNSYLVANIA • RHODE ISLAND • TENNESSEE • TEXAS • UTAH • VIRGINIA • WASHINGTON • WASHINGTON D.C. • WEST VIRGINIA

177324935.3

The Honorable J. Kate Stickles
May 29, 2026
Page 2

causes of action against any insiders or affiliates." See Declaration of Yale Scott Bogen in Support of Debtor's Chapter 11 Petition and First Day Motions [Dkt. 12] at ¶ 79. CMB has challenged that assertion, arguing, among other things, that the Special Committee was not properly convened, the reports were not the product of independent and disinterested business judgment, and the releases contained in the Plan are inappropriate and self-serving.

The Requests, which CMB served on April 1, sought the documents needed to develop those claims. On April 22, the Debtor served its Reponses and Objections to the Requests (the "Responses") in which the Debtor objected to all the Requests and stated that it would only produce a handful of documents but would meet and confer with CMB regarding documents and communications concerning any analyses or investigation made into potential claims against former Tonopah insider, Mark Manski. A copy of the Responses is enclosed herewith as Exhibit A.

The parties discussed the deficiencies in the Responses on April 27. During that call, CMB agreed to narrow the Requests considerably, however, the Debtor continued to refuse to produce documents. Instead, the Debtor requested that the parties agree to bifurcate the remaining discovery to allow the Debtor to focus on finalizing a settlement with one of Tonopah's former managers— Mark Manski. CMB agreed to the requested accommodation and the parties negotiated a schedule which included deadlines for various stages of discovery, depositions, and bifurcated meet and confer conferences (the "Scheduling Order") [Dkt. 283]. The parties spoke again on May 4 regarding, among other things, CMB's need for information supporting the Special Committee reports. Debtor's counsel agreed to provide that information without reference to any additional requests. Neither party agreed that the Debtor satisfied its obligations to produce documents in response to the Requests. To date, the Debtor has only produced the Special Committee reports and some meeting minutes and board resolutions regarding Mark Manski. While Debtor's counsel admitted more is required, the Debtor has yet to provide anything else.

On May 22, CMB attempted to continue discussions regarding the Requests. The Debtor refused, taking the disturbing yet revealing position that CMB had no discovery requests outstanding because CMB did not re-serve the Requests by May 4 in accordance with the Scheduling Order. This position is a blatant attempt to deprive CMB of the material needed to test the woefully deficient Special Committee reports which Debtor plans to rely on in this matter.

On May 26, in anticipation of another meet and confer, CMB provided the Debtor with amended document requests (the "Amended Requests") which substantially narrowed the materials sought. See, Ex. B. Rather than engage with CMB on this issue the Debtor unilaterally and without notice to CMB, contacted the Court.

The Amended Requests are clearly relevant as they pertain directly to issues the Debtor bears the burden of establishing at confirmation—including, but not limited to, the soundness of the Special Committee's reports, the validity of the Special Committee itself, and the independence and disinterestedness of the Board and the members of the Special Committee. The fact that the Requests

177324935.3

The Honorable J. Kate Stickles
May 29, 2026
Page 3

were not re-served on May 4 is irrelevant. The Requests sought the same information that would have been sought had they been re-served on May 4. Furthermore, the Requests were not re-served because CMB's counsel was under a good faith belief that the Requests were still outstanding, a believe supported by the fact that the parties had not yet reconvened to discuss the non-Manski related discovery, including noticed depositions. Finally, the Debtor will not be prejudiced by producing documents regarding issues on which it bears the burden of proof.[1] In contrast, given the scope of the releases denying CMB the documents requested is inequitable and will irreparably harm CMB and the other unsecured creditors.

**B. CMB's discovery responses and objections were sufficient and appropriate.**

In a pair of letters filled with indecorous rhetoric (collectively, the "May Letters") the Debtor takes issue with CMB's responses to the Debtor's Request for Production, Interrogatories, and Requests for Admission Regarding Debtor's Claim Objection (the "Claim Discovery") and the Debtor's Request for Production, Interrogatories, and Requests for Admission Regarding CMB's Motion for Appointment of a Chapter 11 Trustee (the "Trustee Discovery"). See, Exs. C, D. CMB responded to these letters on May 26. See, Exs. B, E.[2]

The Debtor's primary argument is that because CMB served its responses to the Debtor's Requests for Admission one day late, they are deemed admitted, therefore, there is no basis for the Trustee Motion and it must be withdrawn under penalty of sanctions. Exs. C at 1, D at 5. CMB admits it served its responses a single day after the deadline. However, the Debtor's extraordinarily aggressive tactic of asking this Court to deny CMB the opportunity to test a critical component of the Plan is heavy-handed, inequitable, and inappropriate. Notably, neither of the May Letters identify any prejudice the delay caused thus confirming that the true purpose of the Debtor's position is to prejudice CMB.

Regardless, Bankruptcy Rule 7036(b) provides that the Court "may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." This case presents that very situation. Given the facts here, if the Court finds the Requests for Admission were admitted, CMB requests (and will file a formal motion to this effect if necessary) that the admissions be withdrawn or amended to reflect the responses CMB served.

---

[1] Rather than moving to compel production of the documents sought in the Requests, consistent with its previous agreement, CMB is willing to move forward with the Amended Requests.

[2] At 8:35 a.m. today Debtor's counsel sent CMB another letter regarding these issues. Given the timing of that letter, which suggests it was an intentional tactic to further prejudice CMB, counsel has not had an opportunity to sufficiently consider the Debtor's latest allegations. CMB's failure to address them here is not intended as a waiver of arguments it may have.

177324935.3

The Honorable J. Kate Stickles
May 29, 2026
Page 4

The Debtor also complains that CMB objected to every document request. However, the Debtor's document requests did not "describe with reasonable particularity each item or category of items to be inspected . . ." as required by Bankruptcy Rule 7034, thus CMB's objections are appropriate. Moreover, CMB did not simply object. Instead, CMB attempted to discern what the Debtor was seeking and responded that all documents and communications quoted or cited in the Trustee [M]otion are specifically referenced in the motion, and all are documents filed by the Debtor.

The Debtor further claims that CMB has "punt[ed] its discovery obligations" then failed to identify what documents the Debtor should look for. See, Ex. D at 2. This claim is baseless and contrary to the plain language of CMB's responses. Indeed, CMB responded as it did because the Debtor holds the relevant documents. Regarding Claim Discovery RFP Nos. 2, 3, 6, 8-10, 12, and 14-16, a party is permitted to make allegations based on statements the Debtor made in its pleadings and develop those allegations further in discovery. Naturally, documents relating to the topics identified in those requests would be in Debtor's possession. CMB sought those documents but the Debtor has refused to provide them.

Regarding Claim Discovery RFP No. 1, CMB's proofs of claim included claims asserted against the Debtor as a relator under the False Claims Act (the "*qui tam* action"), the first ICC arbitration CMB initiated against the Debtor and several of its affiliates, and the pending second ICC arbitration against the Debtor and several of its affiliates. In the first ICC arbitration, the parties exchanged voluminous documents relating specifically to the claims that are now part of the pending second ICC Arbitration and/or the *qui tam* action. All those documents are in the Debtor's possession, custody, or control. Given that Claim Discovery RFP No. 1 seeks "all documents and communications related to the POC," it is difficult to discern what, exactly, is sought by the request. The same objections apply to Claim Discovery RFP Nos. 7, 11, and 13, inasmuch as the first ICC arbitration and the *qui tam* action assert that the Debtor was involved in the perpetration of a fraud against CMB and the federal government, and the second ICC arbitration asserts that Tonopah aided and abetted breaches of fiduciary duties committed by a related entity.

CMB's responses to Trustee Discovery RFP No. 4 and Claim Discovery RFP No. 19—which seek materials CMB will use at trial—were appropriate. CMB has not yet determined what it will use at trial, but will provide that information once the decision is made.

The Debtor also takes issue with CMB's responses to what are essentially contention interrogatories—seeking the factual and legal basis for specified allegations in the Trustee motion and CMB's proof of claim. Serving contention interrogatories early in the case is not prohibited, however, it is heavily disfavored, especially when much of the information required to fully respond is within the Debtor's control—and the Debtor has refused or failed to produce it. *See e.g.*, *B. Braun Med. Inc. v. Abbott Lab'ys*, 155 F.R.D. 525, 527 (E.D. Pa. 1994) (citation omitted) ("there is considerable support for deferring contention interrogatories until the end of the discovery period. . . . The party serving contention interrogatories bears the burden of proving how an earlier response

177324935.3

The Honorable J. Kate Stickles
May 29, 2026
Page 5

assists the goals of discovery.").  In any event, CMB provided a response based on the information reasonably available to it.

### C.  The Debtor's reckless Rule 11 allegations.

Zealous advocacy is to be expected in cases of this nature, however, accusing a party of filing a pleading without a good faith basis is one of the most serious accusations that can be made.  The May Letters at least insinuate, if not outright accuse CMB and its legal counsel of violating Fed. R. Civ. P. 11.  There is no support for such allegations.  CMB's allegations are based on, among other things, the Debtor's filings and statements. This is sufficient to satisfy Rule 11.  Fed. R. Civ. P. 11(b). Had the Debtor provided the documents sought in discovery CMB would have the additional information the Debtor now seeks.  Regardless, the Debtor's filings and statements, together with the paltry number of documents CMB has received so far, are more than sufficient to satisfy Rule 11.

Nor is the Trustee Motion being presented for any improper purpose. The reality is, the releases in the Plan extend to claims held by CMB against Manski, the Debtor, the Debtor's other related affiliates and insiders, including the Cobra Defendants and the Crescent Dunes Parties, and Board members and management (together, the "Conflicted Parties") and other non-debtors which are claims only general unsecured creditors are able to assert on their own behalf.[3]  This sleight of hand is accomplished through the Plan's lengthy definitions of "Causes of Action," "Chapter 5 Causes of Action," "Released Claims," and "Released Parties."  To be sure, through a series of interlocking definitions, the Plan, if confirmed, would release various direct and indirect claims that the CMB Creditors could have pursued prior to the Petition Date, including various potential fraudulent transfer claims and related state-law claims that a statutory creditors committee (had one been appointed in this case) would be entitled to pursue for the benefit of general unsecured creditors.  *See* Plan, Section 1.1 (¶ 22) ("'Causes of Action' means any and all actions, suits, claims for relief, causes of action, Chapter 5 Causes of Action . . . whether asserted or assertable *directly or derivatively*, in law, equity or otherwise, whether arising prior to or after the Petition Date.") (emphasis added).  Accordingly, the Debtor would accomplish the release of these substantial claims against the Conflicted Parties, without the consent of the CMB Creditors, thereby depriving them of their rights to pursue their claims against the Conflicted Parties for no or at best nominal consideration.  CMB contends that the proffered support for those releases—the Special Committee reports—is insufficient for the Debtor to satisfy the heightened scrutiny that will apply at confirmation and has sought an independent Trustee to evaluate the Debtor's positions.

For the reasons set forth herein, CMB respectfully requests that the Court reject the relief sought by the Debtor and order the Debtor to produce the documents sought in the Amended Requests.

---

[3] As set forth in the CMB proofs of claim, CMB is the largest holder of a Class 6 General Unsecured Claim in this case, holding over at least $90,000,000.00 plus interest, fees, and expenses, including attorneys' fees.  Class 6 General Unsecured Claims will receive no distribution under the Debtor's Chapter 11 Plan and are deemed to reject it.  On April 13, Tonopah filed Debtor's First (Substantive) Omnibus Objection to Proofs of Claim Nos. 10000, 10001, and 10002 [Dkt. 231] and has scheduled the hearing on this objection for the June 25, hearing on confirmation.

177324935.3

The Honorable J. Kate Stickles
May 29, 2026
Page 6

Respectfully,

*/s/ Sean M. Brennecke*
Sean M. Brennecke (DE Bar No. 4686)

Enclosures

cc:    Scott Cousins, Esq. (via e-filing)
       Timothy J. Nally, Esq. (via e-filing)
       Aaron S. Applebaum, Esq. (via e-filing)
       Rachel E. Albanese, Esq. (via e-filing)
       Stephanie B. Cohen, Esq. (via e-filing)
       Nicole McLemore, Esq. (via e-filing)
       David M. Riley, Esq. (via e-filing)

177324935.3