**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| | Chapter 11 |
| In re: | Case No. 26-10060 (JKS) |
| Tonopah Solar Energy, LLC,[1] | (Jointly Administered) |
| Debtor. | **Related D.I.: 229, 230, 242, 279, 285, 287, 299, 300, 301, 344, 365, 381, 382, 397, 407, 408, 409 & 410** |

**FINDINGS OF FACT, CONCLUSIONS
OF LAW, AND ORDER CONFIRMING DEBTOR'S
COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN**

**WHEREAS**, Tonopah Solar Energy, LLC (the "Debtor") has, among other things:

a.   commenced the above-captioned chapter 11 case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on January 21, 2026 (the "Petition Date") with the Bankruptcy Court for the District of Delaware (the "Court");

b.   continued to operate its businesses and manage its properties as debtor in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

c.   filed, on April 17, 2026, the *Motion of the Debtor for Entry of an Order (I) Approving Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Only; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Combined Disclosure Statement and Plan; (III) Approving Form of Ballot and Solicitation Packages; (IV) Establishing Voting Record Date; (V) Scheduling Combined Hearing for Final Approval of the Adequacy of Disclosures in, and Confirmation of, Combined Disclosure Statement and Plan; and (VI) Granting Related Relief* [D.I. 242] (the "Solicitation Motion");

d.   filed, on April 13, 2026, the *Combined Disclosure Statement and Chapter 11 Plan* [D.I. 229] (as amended, supplemented, or otherwise modified from time to time, the "Combined Disclosure Statement and Plan");[2]

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Tonopah Solar Energy, LLC (1316).  The Debtor's headquarters is located at 11 Gabbs Pole Line Road, Box 1071, Tonopah, NV 89049.

[2] Capitalized terms used but not otherwise defined herein will have the meanings ascribed to them in the Combined Disclosure Statement and Plan or, if not defined therein, the Solicitation Order.  As used herein, the term "Disclosure Statement" means the disclosure statement that is embodied in the Combined Disclosure Statement and Plan, and the

e.  obtained, on May 13, 2026, entry of the *Order (I) Approving the Debtor's Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Combined Disclosure Statement and Plan; (III) Approving the Form of Ballot and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Disclosures in, and Confirmation of, the Combined Disclosure Statement and Plan; and (VI) Granting Related Relief* [D.I. 287] (the "Solicitation Order") approving the solicitation procedures (the "Solicitation Procedures"), and related notices, forms, and ballots (collectively, the "Solicitation Packages");

f.  filed, on May 14, 2026, the solicitation version of the Combined Disclosure Statement and Plan [D.I. 300];

g.  commenced service of the Solicitation Packages and notice of the hearing to consider final approval of the Disclosure Statement and confirmation of the Plan (the "Confirmation Hearing") and the deadline for objecting to confirmation of the Plan on or about May 18, 2026, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Solicitation Order, and the Solicitation Procedures, as evidenced by, among other things, the *Certificate of Service* of Solicitation Materials [D.I. 320] and the *Certificate of Service* for the Plan Supplement [D.I. 379];

h.  filed on June 6, 2026, the *Notice of Rescheduled Hearing and Confirmation Deadlines* [D.I. 344] (the "Revised Scheduling Notice"), as evidenced by, among other things, the *Certificate of Service* [D.I. 356], providing notice that the Confirmation Hearing was rescheduled and the Debtor modified certain remaining deadlines set forth in the Solicitation Order;

i.  filed, on June 15, 2026, the Plan Supplement [D.I. 365] (together with the exhibits attached thereto, each as may be amended, supplemented, or otherwise modified from time to time, the "Plan Supplement");

j.  filed, on June 22, 2026, the *Declaration of Thomas J. Donnelly in Support of Independence of the Special Committee* [D.I. 381] (the "Donnelly Declaration");

k.  filed, on June 22, 2026, the *Declaration of Ken Coleman in Support of Independence of the Special Committee* [D.I. 382] (the "Coleman Declaration");

l.  filed, on June 23, 2026, the *Declaration of Emily Young of Epiq Corporate Restructuring, LLC Regarding the Solicitation and Tabulation of Ballots Cast on the Combined Disclosure Statement and Chapter 11 Plan* [D.I. 397] (the "Voting Report");

---

term "Plan" means the chapter 11 plan that is embodied in the Combined Disclosure Statement and Plan. The Combined Disclosure Statement and Plan is attached hereto as **Exhibit A**.

m.  filed, on July 1, 2026, the *Memorandum of Law (I) in Support of Confirmation of the Combined Disclosure Statement and Chapter 11 Plan* [D.I. 409] (the "Confirmation Brief");

n.  filed, on July 1, 2026, the *Declaration of Yale Scott Bogen in Support of Confirmation of the Debtor's Combined Disclosure Statement and Chapter 11 Plan* [D.I. 407] (the "Bogen Declaration");

o.  filed, on July 1, 2026, the *Declaration of Ken Coleman in Support of Confirmation of the Debtor's Combined Disclosure Statement and Chapter 11 Plan* [D.I. 408] (the "Supplemental Coleman Declaration");

p.  filed, on July 1, 2026, the *Findings of Fact, Conclusions of Law, and Order Confirming Debtor's Combined Disclosure Statement and Chapter 11 Plan* [D.I. 410]; and

This Court having:

a.  entered the Solicitation Order on May 13, 2026;

b.  set June 22, 2026, at 4:00 p.m. (Eastern Time) as the deadline for filing objections in opposition to the Combined Disclosure Statement and Plan;

c.  set June 22, 2026, at 4:00 p.m. (Pacific Time) as the deadline for voting on the Combined Disclosure Statement and Plan;

d.  held, on July 7, 2026, the Confirmation Hearing in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e.  reviewed the Combined Disclosure Statement and Plan, the Confirmation Brief, the Donnelly Declaration, the Coleman Declaration, the Bogen Declaration, the Supplemental Coleman Declaration, the Voting Report, and all pleadings, exhibits, and statements regarding confirmation;

f.  considered all testimony, documents, filings, and other evidence presented or admitted at the Confirmation Hearing;

g.  taken note that no party has filed any objections to final approval of the Disclosure Statement, to the Plan, or to confirmation;

h.  entered rulings on the record at the Confirmation Hearing (the "Confirmation Ruling"); and

i.  taken judicial notice of the docket, including all pleadings, orders, notices and other documents filed in this chapter 11 case.

**NOW, THEREFORE**, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to confirmation have been adequate and

3

appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the Court having found that the record of this chapter 11 case and the legal and factual bases set forth in the documents filed in support of confirmation and all evidence proffered or adduced by counsel at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and order (this "Confirmation Order"):

**IT IS HEREBY FOUND AND DETERMINED THAT:**

**A.     Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))**

1.     The Court has jurisdiction over this chapter 11 case under 28 U.S.C. § 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012.  Final approval of the Disclosure Statement and confirmation of the Plan are each a core proceeding under 28 U.S.C. § 157(b), and the Court has jurisdiction to enter a Final Order approving the Disclosure Statement and determining that the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed and approved.  Venue is proper in this District under 28 U.S.C. § 1408.

**B.     Eligibility for Relief**

2.     The Debtor is and continues to be, under section 109 of the Bankruptcy Code, eligible to be a debtor under chapter 11 of the Bankruptcy Code.

**C.     Commencement of This Chapter 11 Case**

3.     On the Petition Date, the Debtor commenced this chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor has operated its business and managed its properties as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.

**D.     No Committee**

4.     No committee of unsecured creditors was appointed in this chapter 11 case.

**E.     Plan Supplement**

5.     The Plan Supplement complies with the terms of the Plan, and the Debtor provided good and proper notice of the filing of the Plan Supplement in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order, and the facts and circumstances of this chapter 11 case.  No other or further notice is or will be required with respect to the Plan Supplement.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, the Debtor has reserved the right and is authorized to alter, amend, update, or modify the Plan Supplement prior to the Effective Date, in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**F.     Judicial Notice**

6.     The Court takes judicial notice of the docket of this chapter 11 case, including all pleadings, notices and other documents filed, and all orders entered during this chapter 11 case.

**G.     Solicitation Order**

7.     On May 13, 2026, the Court entered the Solicitation Order, which, among other things, fixed June 15, 2026, at 4:00 p.m. (Eastern Time) as the deadline for objecting to the Plan (the "Plan Objection Deadline"), June 15, 2026, at 4:00 p.m. (Pacific Time) as the deadline for voting to accept or reject the Plan (the "Voting Deadline"), and June 25, 2026, at 10:00 a.m. (Eastern Time) as the scheduled date and time for the Confirmation Hearing.  Those deadlines were extended, as provided for in the Revised Scheduling Notice and as authorized by the Solicitation Order.  The Debtor has complied with the Solicitation Order in all respects.

**H.    Transmittal and Mailing of Materials; Notice**

8.    The Debtor provided due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Solicitation Order, the Solicitation Packages, the Confirmation Hearing Notice, the Plan Supplement, and all the other materials distributed by the Debtor in connection with confirmation of the Plan in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3018, 3019, and 3020(c), the Local Bankruptcy Rules for the District of Delaware (the "Local Rules"), and the procedures set forth in the Solicitation Order.  The Debtor provided due, adequate, and sufficient notice of the Voting Deadline and the Plan Objection Deadline, the Confirmation Hearing (as may be continued from time to time), and any applicable bar dates and hearings described in the Solicitation Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Solicitation Order.  No other or further notice is or will be required.

**I.    Solicitation**

9.    The Debtor solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation complied with sections 1125 and 1126, and all other applicable sections, of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Solicitation Order, the Local Rules, and all other applicable rules, laws, and regulations.

**J.    Voting Report**

10.    On June 23, 2026, the Debtor filed the Voting Report.  As evidenced thereby, the procedures used to tabulate ballots were fair and conducted in accordance with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

11.     As set forth in the Plan, Holders of Claims in Class 3, Class 5, and Class 7 (the "Voting Classes") were eligible to vote on the Plan in accordance with the Solicitation Procedures.  Holders of Claims in Class 1, Class 2, and Class 4 (the "Deemed Accepting Classes") are Unimpaired and conclusively presumed to accept the Plan.  Holders of Claims and Interests in Class 6 and Class 8 (the "Deemed Rejecting Classes") are Impaired under the Plan, are entitled to no recovery under the Plan, and are therefore deemed to have rejected the Plan.

12.     As evidenced by the Voting Report, creditors in Class 3 (Prepetition Lender Claims) representing 100 percent by amount of voted claims and 100 percent by number in the aggregate voted to accept the Plan, creditors in Class 5 (Former Manager Claims) representing 100 percent by amount of voted claims and 100 percent by number in the aggregate voted to accept the Plan, and creditors in Class 7 (General Unsecured Convenience Class Claims) representing 100 percent by amount of voted claims and 100 percent by number in the aggregate voted to accept the Plan, all in accordance with section 1126 of the Bankruptcy Code.

13.     Based on the foregoing, and as evidenced by the Voting Report, at least one Impaired Class of Claims (excluding the acceptance by any insiders of the Debtor) has voted to accept the Plan in accordance with the requirements of sections 1124, 1126(c), and 1129(a)(10) of the Bankruptcy Code.

**K.     Burden of Proof**

14.     The Debtor, as proponent of the Plan, has met its burden of proving each required element of section 1129 of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for confirmation.  Further, as set forth below, the Debtor has proven each required element of section 1129 of the Bankruptcy Code by clear and convincing evidence.  In support of confirmation, the Court accepted as uncontroverted evidence the Donnelly Declaration,

the Coleman Declaration, the Voting Report, the Bogen Declaration, and the Supplemental Coleman Declaration.

**L.      Adequacy of the Disclosure Statement**

15.      The Disclosure Statement contains extensive material information regarding the Debtor, the chapter 11 case, and the Plan so that parties entitled to vote on the Plan could make informed decisions regarding the Plan.  The Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code and complies with any additional applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and non-bankruptcy law. The Debtor's solicitation of acceptances and rejections of the Plan via transmittal of the Combined Disclosure Statement and Plan and the other materials in the Solicitation Packages was authorized by and complied with the Solicitation Order and was appropriate under the circumstances.

**M.      Bankruptcy Rule 3016**

16.      The Plan is dated and identifies the Debtor as the Plan proponent, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

17.      The injunction, release, section 1125(e), and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

**N.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

18.      The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

**a.      Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

19.      The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**i.      Sections 1122 and 1123(a)(1)—Proper Classification**

20.      The Plan satisfies the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.  As required by section 1123(a)(1) of the Bankruptcy Code, in addition to Administrative Claims, Priority Tax Claims, U.S. Trustee Fees, DIP Claims, and Professional Fee Claims, Article III of the Plan designates eight Classes of Claims and Interests.  As required by section 1122(a) of the Bankruptcy Code, the Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as applicable, in each such Class.  Valid business, factual, and legal reasons exist for the separate classification of such Claims and Interests, and such classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, holders of Claims and Interests.

**ii.      Section 1123(a)(2)—Specification of Unimpaired Classes**

21.      The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Class 1, Class 2, and Class 4 are Unimpaired under the Plan.

**iii.      Section 1123(a)(3)—Specification of Treatment of Impaired Classes**

22.      The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Class 3, Class 5, Class 6, Class 7 and Class 8 are Impaired under the Plan.

### iv.   Section 1123(a)(4)—No Discrimination

23.   The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. Article III of the Plan provides for the same treatment for each Claim or Interest in any particular Class, as the case may be, except to the extent the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.

### v.   Section 1123(a)(5)—Adequate Means for Plan Implementation

24.   The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan and the documents included in the Plan Supplement provide adequate and proper means for execution and implementation of the Plan, including: (a) the Sale Transaction; (b) the Former Manager Settlement; (c) the schedule of assumed contracts; (d) the schedule of Retained Causes of Action; (e) the identity and terms of compensation of the Plan Administrator; and (f) the Wind-Down Budget.

### vi.   Section 1123(a)(6)—Non-Voting Equity Securities

25.   The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code. The Plan does not provide for the issuance of equity or other securities of the Debtor, including nonvoting equity securities.

### vii.   Section 1123(a)(7)—Directors, Officers, and Trustees

26.   The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. Section 7.4 of the Plan deems all of the Debtor's officers and managers resigned from their duties effective as of the Effective Date without any further action.  In addition, section 7.8 of the Plan provides that the Plan Administrator will act for the Wind-Down Debtor in the same fiduciary capacity as applicable to a board of managers and officers.

27.     The manner for selection of the Plan Administrator is set forth in the Plan.  The selection of the Plan Administrator is consistent with the interests of Holders of Claims and Interests and public policy.

**b.      Section 1123(b)—Discretionary Contents of the Plan**

28.     The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are consistent with the applicable provisions of the Bankruptcy Code. Thus, the Plan satisfies section 1123(b).

**i.      Impairment / Unimpairment of Any Class of Claims or Interests**

29.     Under the Plan, Article III of the Plan impairs or leaves Unimpaired, as the case may be, each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

**ii.     Assumption and Rejection of Executory Contracts and Unexpired Leases**

30.     Article IX of the Plan provides for the automatic rejection of the Debtor's Executory Contracts and Unexpired Leases that are (i) not assumed or rejected before the Effective Date (excluding, for the avoidance of doubt, insurance policies), or (ii) not subject to a pending motion to assume or reject as of the Effective Date.  Entry of this Confirmation Order will constitute approval of such assumptions, assumptions and assignments, including the assumptions set forth in the Plan Supplement, and rejections of such Executory Contracts or Unexpired Leases under sections 365(a) and 1123 of the Bankruptcy Code.

31.     To the extent that an insurance policy or agreement is determined to be an Executory Contract or Lease subject to assumption by the Debtor, such executory insurance policy or agreement, as the case may be, is hereby assumed and assigned to, and will vest with, the Wind-Down Debtor. For the avoidance of doubt, all insurance policies and agreements of the Debtor,

and all obligations of the Debtor and the other counterparties thereto, will be unaffected by the Plan and will remain enforceable according to their terms and applicable law. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtor's assumption of the insurance policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan will not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption of the insurance policies, and each such obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtor under the Plan as to which no Proof of Claim need be Filed.

### iii.    Compromise and Settlement

32.    The settlements embodied in the Plan satisfy the requirements of Bankruptcy Rule 9019, and the treatment of claims and interests under the Plan satisfies the requirements section 1129 of the Bankruptcy Code.  In particular, the parties to the Former Manager Settlement were each represented by counsel, the terms of the agreement were negotiated at arm's length, and the agreement is fair, reasonable, and in the best interests of the Debtor and its Estate and creditors.

### iv.    Debtor Release

33.    As demonstrated in the Bogen Declaration, the releases of Claims and Causes of Action by the Debtor described in Section 8.2 of the Plan in accordance with section 1123(b) of the Bankruptcy Code (the "Debtor Release") are an integral part of the Plan and represent a valid exercise of the Debtor's business judgment under Bankruptcy Rule 9019, and other applicable non-bankruptcy law.  The Debtor's or the Wind-Down Debtor's pursuit of any such claims against the Released Parties would not be in the best interest of the Estate's various constituencies because, among other things, the costs involved would likely outweigh any potential benefit from pursuing such Claims.  The Debtor Release is fair and equitable and complies with the absolute priority rule.

12

34.     The scope of the Debtor Release is appropriately tailored under the facts and circumstances of this chapter 11 case.  Importantly, the Debtor has presented uncontroverted evidence that the Debtor's estate does not have valuable or material claims or causes of action against any of the Released Parties.  The Debtor Release, which incorporates by reference each related provision and definition contained in the Plan, is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by such releases; (c) in the best interests of the Debtor and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to the Debtor or its Estate asserting any Claim or Cause of Action released under such Debtor Release.  In light of, among other things, the value provided by the Released Parties to the Debtor's Estate and the critical nature of the Debtor Release to the Plan, the Debtor Release is appropriate and satisfies the factors for approval under *In re Zenith Elec. Corp.*, 241 B.R. 92, 110-11 (Bankr. D. Del. 1999) (citing *Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994)).

### v.     Release by Holders of Claims and Interests

35.     As demonstrated in the Bogen Declaration, the release by the Releasing Parties set forth in Section 8.3 of the Plan (the "Third-Party Release") is an essential provision and an integral part of the Plan.  The Third-Party Release is consensual, as the Releasing Parties were provided adequate notice of this chapter 11 case and related proceedings, the Plan, and the deadline to object to confirmation of the Plan, and all Holders of Claims and Interests, as applicable, were given the opportunity to manifest consent to the Third-Party Release in accordance with the Solicitation Order.  The release provisions of the Plan were conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, the Confirmation Hearing Notice, the notices of non-voting status, and the ballots.  Among other things, the Plan provides appropriate and specific disclosure

13

with respect to the Claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure or notice is necessary or will be required.  The Third-Party Release is specific in language, integral to the Plan, and given for substantial consideration.  In light of the foregoing, the Third-Party Release is approved.

### vi.    Exculpation & 1125(e) Provisions

36.    The exculpation provision set forth in Section 8.4 of the Plan (the "Exculpation Provision") and Bankruptcy Code section 1125(e) provision set forth in Section 8.5 of the Plan (the "1125(e) Provision") are essential to the Plan.  The Exculpation Provision and the 1125(e) Provision are consistent with established practice in this jurisdiction and appropriately afford protection to certain parties who constructively participated in and contributed to the Debtor's chapter 11 process, including the formulation and solicitation of the Plan.  The record in this chapter 11 case fully supports the Exculpation Provision and the 1125(e) Provision, which is tailored to protect the Exculpated Parties and the 1125(e) Parties from inappropriate litigation.

### vii.    Injunction

37.    The injunction provision set forth in Section 8.6 of the Plan (the "Injunction Provision"):  (a) is within the jurisdiction of this Court; (b) is an integral element of the transactions incorporated in the Plan; (c)is important to the overall objections of the Plan; (d) is consistent with sections 105, 1123, 1129, and 1141 of the Bankruptcy Code, other provisions of the Bankruptcy Code, and other applicable law; and (e) is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, the Exculpation Provision, and the 1125(e) Provision.  The Injunction Provision is appropriately tailored to achieve those purposes.

### viii.    Preservation of Retained Actions

38.    Section 7.11 of the Plan appropriately provides for the preservation by the Debtor of the Retained Actions in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.

39.     The Plan is specific with respect to the Causes of Action to be retained as Retained Actions by the Debtor, and the Plan and Plan Supplement provide meaningful disclosure with respect to the Retained Actions that the Wind-Down Debtor may retain, and all parties in interest received adequate notice with respect to such Causes of Action.  The provisions regarding Causes of Action in the Plan are appropriate and in the best interests of the Debtor, its Estate, and Holders of Claims and Interests.  For the avoidance of doubt, unless a Retained Action against any Entity is expressly waived, relinquished, released, compromised, exculpated, or settled under the Plan or any Final Order (including the Confirmation Order, the Final DIP Order, and the Sale Order), the Debtor expressly reserves such Retained Action to be vested in the Wind-Down Debtor for possible prosecution by the Plan Administrator, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Retained Actions upon or after the entry of the Confirmation Order or Effective Date based on the Plan or the Confirmation Order, except where such Retained Actions have been waived, relinquished, released, compromised, exculpated, or settled under the Plan or any Final Order (including the Confirmation Order, the Final DIP Order, and the Sale Order).

### ix.     Release of Liens

40.     The lien release provisions of Section 8.1 of the Plan are appropriate, fair, equitable and reasonable and in the best interests of the Debtor, its Estate, and Holders of Claims and Interests, and are approved.

### x.     Additional Plan Provisions

41.     The other discretionary provisions of the Plan, including the Plan Supplement, are appropriate and consistent with applicable provisions of the Bankruptcy Code, including, without

limitation, provisions for treatment of indemnification obligations, setoffs, and the retention of jurisdiction by the Court.

        **c.        Section 1129(a)(2)—Debtor's Compliance with the Applicable Provisions of the Bankruptcy Code**

42.      The Debtor, as proponent of the Plan, has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1128, and 1129 of the Bankruptcy Code, and with Bankruptcy Rules 2002, 3017, 3018, and 3019.

43.      The Debtor and its agents solicited votes to accept or reject the Plan after the Court entered the Solicitation Order approving the Solicitation Packages and Solicitation Procedures.

44.      The Debtor and its agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith (as such term is used in section 1125(e) of the Bankruptcy Code), and in a manner consistent with the applicable provisions of the Solicitation Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation and 1125(e) Provisions set forth in Article VIII of the Plan.

45.      The Debtor, its agents, and, to the extent applicable, the 1125(e) Parties have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made under the Plan, so long as such distributions are made consistent with the terms of and under the Plan.  Each of the 1125(e) Parties is entitled to all of the protections and

benefits afforded by section 1125(e) of the Bankruptcy Code in connection with such party's solicitation and participation in relation to the Plan.

### d.    Section 1129(a)(3)—Proposal of Plan in Good Faith

46.    The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtor has proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of this chapter 11 case, the Sale Transaction, the Plan itself, and the process leading to its formulation.  The Debtor's good faith is evident from the facts and the record of this chapter 11 case, the Plan, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in this chapter 11 case.

47.    The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtor's Estate and effectuating a successful chapter 11 proceeding for the Debtor. The Plan was the product of extensive negotiations conducted at arm's length among the Debtor and certain of their key stakeholders including, but not limited to, Crescent Dunes Finance, Inc., the Former Managers, the United States Government, and the United States Trustee.  Further, the Plan's classification, settlement, exculpation, release, and injunction provisions have been negotiated extensively in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(6), 1125(e), 1129, 1141, and 1142 of the Bankruptcy Code, and are each necessary for the Debtor to consummate a value-maximizing conclusion to this chapter 11 case.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### e.    Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable

48.    Payments made or to be made by the Debtor for services or for costs and expenses in or in connection with this chapter 11 case, or in connection with the Plan and incident to this

chapter 11 case, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

      **f.**      **Section 1129(a)(5)—Disclosure of Directors, Officers and Managers and Consistency with the Interests of Creditors and Public Policy**

49.      Because the Plan provides for the orderly wind-down of the Debtor and resignation of the Debtor's officers and managers, section 1129(a)(5) of the Bankruptcy Code does not apply. To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Wind-Down Debtor, the Debtor has satisfied the requirements of this provision by, among other things, disclosing the identity, affiliations, and terms of compensation of the Plan Administrator.

      **g.**      **Section 1129(a)(6)—Rate Changes**

50.      Section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan. The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require governmental regulatory approval.

      **h.**      **Section 1129(a)(7)—Best Interests of Holders of Claims and Interests**

51.      The Debtor has demonstrated that the Plan is in the best interests of its creditors and equity interest holders. The requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied. The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing, including the Liquidation Analysis attached as <u>Exhibit A</u> to the Combined Disclosure Statement and Plan, together with the facts and circumstances of this chapter 11 case, establish that each Holder of an Allowed Claim or Interest in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtor were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

i.    **Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Impaired Classes; Fairness of Plan with Respect to Deemed Rejecting Classes**

52.    Class 1, Class 2, and Class 4 are Unimpaired by the Plan under section 1124 of the Bankruptcy Code and, accordingly, Holders of Claims in each such Class are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Class 3, Class 5, and Class 7 are Impaired by the Plan and entitled to vote on the Plan.  As reflected in the Voting Report, creditors in Class 3 representing 100 percent by amount of voted claims and 100 percent by number in the aggregate voted to accept the Plan, creditors in Class 5 representing 100 percent by amount of voted claims and 100 percent by number in the aggregate voted to accept the Plan, and creditors in Class 7 representing 100 percent by amount of voted claims and 100 percent by number in the aggregate voted to accept the Plan.  Class 6 and Class 8 are Impaired Classes that will not receive or retain any property under the Plan on account of the Claims or Interests in each such Class, are not entitled to vote on the Plan, and are deemed to reject the Plan.

53.    As set forth below, the Debtor satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to the Claims or Interests that are deemed to reject the Plan.

j.    **Section 1129(a)(9)—Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code**

54.    The treatment of Administrative Claims, Priority Tax Claims, DIP Claims, Professional Fee Claims, and payment of U.S. Trustee statutory fees under Section 2.1 of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

k.    **Section 1129(a)(10)—Acceptance by at Least One Impaired Class**

55.    The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As set forth in the Voting Report, each Impaired Class that was entitled to vote on the Plan has

19

voted to accept the Plan. Specifically, creditors in Class 3 (Prepetition Lender Claim) representing 100 percent by amount of voted claims and 100 percent by number in the aggregate voted to accept the Plan, creditors in Class 5 (Former Manager Claims) representing 100 percent by amount of voted claims and 100 percent by number in the aggregate voted to accept the Plan, and creditors in Class 7 (General Unsecured Convenience Class Claims) representing 100 percent by amount of voted claims and 100 percent by number in the aggregate voted to accept the Plan. Both Class 5 and Class 7 are comprised entirely of non-insiders. Accordingly, at least one Class of Claims that is Impaired under the Plan has voted to accept the Plan, determined without including any acceptance of the Plan by any insider (as such term is defined in section 101(31) of the Bankruptcy Code).

**l.      Section 1129(a)(11)—Feasibility of the Plan**

56.      The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtor at or before the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and confirmation of the Plan is not likely to be followed by liquidation (other than as contemplated by the Plan) or the need for further financial reorganization; and (d) establishes that the Debtor will have sufficient funds available to meet its obligations under the Plan.

**m.      Section 1129(a)(12)—Payment of Statutory Fees**

57.      The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Section 2.1 of the Plan provides for the payment of all fees payable under section 1930(a) of the Judicial Code, as determined by the Court at the Confirmation Hearing in accordance with section 1128 of the Bankruptcy Code.

**n.    Section 1129(a)(13)—Retiree Benefits**

58.    The Debtor does not have any obligations to pay retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code).    Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to this chapter 11 case and the Plan.

**o.    Section 1129(a)(14), (15), and (16)—Domestic Support Obligations, Individuals, and Nonprofit Corporations**

59.    The Debtor does not owe any domestic support obligations, is not an individual, and is not a nonprofit corporations.    Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to this chapter 11 case.

**p.    Section 1129(b)—Confirmation of Plan over Nonacceptance of Impaired Classes**

60.    The Plan may be confirmed as to any Class that is deemed to have rejected the Plan (collectively, the "Deemed Rejecting Classes") under section 1129(b) of the Bankruptcy Code, notwithstanding that the requirements of section 1129(a)(8) have not been met with respect to the Deemed Rejecting Classes, because the Debtor has demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to the Holders of Claims and Interests in the Deemed Rejecting Classes.    The Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed despite the fact that the Deemed Rejecting Classes are deemed to reject the Plan.    After entry of this Confirmation Order and upon the occurrence of the Effective Date, the Plan will be binding upon the Holders of Claims and Interests, as applicable, in the Deemed Rejecting Classes.

**q.    Section 1129(c)—Only One Plan**

61.    The Plan is the only plan filed in this chapter 11 case and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

**r.      Section 1129(d)—Principal Purpose of the Plan**

62.      The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.  As evidenced by its terms, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

**s.      Section 1129(e)—Not a Small Business Case**

63.      This chapter 11 case is not a small business case, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to this chapter 11 case.

**O.      Satisfaction of Confirmation Requirements**

64.      Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtor, as applicable, satisfy all requirements for confirmation of a chapter 11 plan set forth in section 1129 of the Bankruptcy Code.

**P.      Good Faith**

65.      The Debtor has acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.  The Debtor has proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of its Estate for the benefit of its stakeholders.  The Plan is the product of extensive collaboration among the Debtor and its key stakeholders, including, but not limited to, the Prepetition Lender and DIP Lender and the Former Managers, and accomplishes the Debtor's goal.  Accordingly, the Debtor or the Wind-Down Debtor, as applicable, have been, are, and will continue acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this Confirmation Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

22

**Q.    Disclosure: Agreements and Other Documents**

66.    The Debtor has disclosed all material facts, to the extent applicable, regarding: (a) the identity, affiliations, and compensation of the Plan Administrator; (b) the method and manner of distributions under the Plan; (c) the adoption, execution, and implementation of the other matters provided for under the Plan, including those involving corporate action to be taken by or required of the Debtor or the Wind-Down Debtor, as applicable; (d) the exemption, if applicable, under section 1146(a) of the Bankruptcy Code; (e) the Retained Actions and other Causes of Action; and (f) the adoption, rejection, execution, and delivery, as applicable, of all contracts, leases, instruments, securities, releases, and other agreements related to any of the foregoing.

**R.    Conditions to Effective Date**

67.    The Plan will not become effective unless and until the conditions set forth in Article XI of the Plan have been satisfied or waived under Section 11.1 of the Plan.  Each of the conditions set forth in Article XI of the Plan is reasonably likely to be satisfied or waived in accordance with the Plan.

**S.    Implementation**

68.    The Debtor has exercised reasonable business judgment in determining to enter into all documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement. The Debtor, the Wind-Down Debtor, and the Plan Administrator, as applicable, are authorized to take any action reasonably necessary or appropriate to implement, effectuate and consummate the Plan, the documents and agreements necessary to implement the Plan, this Order, and the transactions contemplated thereby or hereby.

**T.      Vesting of Remaining Assets in the Wind-Down Debtor**

69.      Except as otherwise provided in the Plan, the Purchase Agreement, the Sale Order, the Final DIP Order, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all remaining Estate assets will vest in the Wind-Down Debtor for the purpose of administering the Estate and consummating the Plan.

**U.      Treatment of Executory Contracts and Unexpired Leases**

70.      Under sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan provides for rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date except as otherwise provided in the Plan, the Sale Order, or another prior or pending notice and/or motion.   The Debtor's determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtor, are necessary to the implementation of the Plan, and are in the best interests of the Debtor, its Estate, Holders of Claims and Interests and other parties in interest in this chapter 11 case.

**V.      Objections and Waiver of Stay**

71.      All objections to confirmation not filed and served prior to the deadline for filing objections to the Plan set forth in the Confirmation Hearing Notice and the Revised Scheduling Notice, if any, are deemed waived and will not be considered by the Court.

72.      All parties have had a full and fair opportunity to litigate all issues in the Plan, and all informal comments and raised objections that were raised or asserted have been fully and fairly resolved, including by agreed-upon language and reservations of rights as set forth in this Confirmation Order.

73.      Any stays applicable to any such objections, responses, reservations, statements, and comments are waived.

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

74.    The Disclosure Statement hereby is approved on a final basis as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules, and regulations.

75.    The Plan, including all exhibits attached thereto, hereby is confirmed under section 1129 of the Bankruptcy Code.  The Debtor and the Plan Administrator, jointly or individually, are authorized to implement the provisions of the Plan and consummate the Plan, including taking all actions they deem necessary, advisable, or appropriate to effectuate the Plan without any further authorization except as may be expressly required by the Plan or this Confirmation Order.

76.    This Confirmation Order approves the Plan Supplement, including the documents contained therein, as they may be amended through and including the Effective Date in accordance with and as permitted by the Plan.

77.    The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order.

78.    The terms of the Plan, the Plan Supplement, all exhibits thereto, and this Confirmation Order will be effective and binding as of the Effective Date on all parties in interest, including, without limitation: (a) the Debtor and Wind-Down Debtor; (b) the Prepetition Lender and DIP Lender; (c) the Purchaser; (d) Holders of General Unsecured Claims; and (e) all Holders of Claims and Interests.

79.    The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that each of the

Plan, the Plan Supplement, and any related document, agreement, or exhibit is approved in its entirety.

## A.    Findings of Fact and Conclusions of Law

80.    The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to confirmation, including the Confirmation Ruling, are hereby incorporated into this Confirmation Order.  To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such.  To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

## B.    Plan Modifications

81.    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan are hereby deemed to have accepted the Plan subject to the technical modifications set forth in this Confirmation Order.  Under Bankruptcy Rule 3019, such technical modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  No Holder of a Claim who has voted to accept the Plan will be permitted to change its vote as a consequence of the Plan or Plan Supplement modifications.  All modifications to the Plan or Plan Supplement made after the Voting Deadline are hereby approved under section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**C.      Modification of Plan Supplement**

82.      Subject to the terms of the Plan and this Confirmation Order, the Debtor is authorized to modify and amend the Plan Supplement through and including the Effective Date, and to take all actions it deems necessary and appropriate to effect the transactions contemplated therein through, including, and following the Effective Date.

**D.      Postconfirmation Modification of the Plan**

83.      Subject to the limitations and terms contained in Article XII of the Plan, the Debtor is hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, without further order of the Court.

**E.      Plan Classification Controlling**

84.      The terms of the Plan will solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder, and the classifications set forth on the ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event will be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; and (c) will not be binding on the Debtor except for voting purposes.

**F.      Sources of Consideration for Plan Distributions**

85.      The Wind-Down Debtor will fund distributions under the Plan from the sources set forth therein. Notwithstanding anything to the contrary in the Plan, on the Effective Date, any Cause of Action not settled, released, enjoined, or exculpated under Article VIII of the Plan on or prior to the Effective Date will vest in the Wind-Down Debtor and will be subject to administration by the Plan Administrator.

**G.     Wind-Down Debtor**

86.     On the Effective Date, the authority, power, and incumbency of the persons acting as managers, and officers of the Debtor shall be deemed to have terminated, and the persons acting as managers, and officers of the Debtor shall be deemed to have resigned.  Following such terminations and resignations, the Plan Administrator shall be the sole representative of the Wind-Down Debtor and shall succeed to the powers of the Debtor's managers and officers, without the need for any corporate action. After the Effective Date, the Plan Administrator is authorized to dissolve or terminate the existence of the Debtor for all purposes in accordance with any applicable state or federal law.  Notwithstanding the Debtor's dissolution, the Debtor will be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

87.     Upon the Effective Date, all actions contemplated under the Plan will be deemed authorized and approved in all respects, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, managers, or officers of the Wind-Down Debtor.

**H.     Plan Administrator**

88.     The Plan Administrator will retain and have all the rights, powers, and duties necessary to carry out his responsibilities under the Plan and as provided in the Confirmation Order.

89.     The Plan Administrator will act for the Wind-Down Debtor in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof.  On the Effective Date, the authority, power, and incumbency of the persons acting as managers and officers of the Debtor will be deemed to have resigned, solely in their capacities as such, and the Plan Administrator will succeed to the powers of the Debtor's managers and officers.  From and

28

after the Effective Date, the Plan Administrator will be the sole representative of, and will act for, the Wind-Down Debtor. For the avoidance of doubt, the foregoing will not limit the authority of the Wind-Down Debtor or Plan Administrator, as applicable, to continue the employment of any former manager, officer, employee, or other agent or representative.

90. The Plan Administrator is authorized to establish and maintain the Wind Down Reserve to satisfy future costs and expenses for the implementation of the Plan and discharge of its duties thereunder.

### I. Plan Implementation Authorization

91. The Debtor or the Wind-Down Debtor, as applicable, is authorized to take all necessary or appropriate steps, and perform all necessary or appropriate acts, that it determines are necessary or appropriate to carry out the wind-down of the Debtor under the Plan, including as applicable, (a) consummation of the Sale Transaction and (b) the execution, delivery and filing of appropriate agreements or other documents of restructuring, disposition, dissolution, transfer, liquidation, sale, or purchase containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law, and to take all other actions determined by the Debtor or the Wind-Down Debtor to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan.

### J. Cancellation of Existing Securities and Agreements

92. Except as otherwise provided in the Plan, and in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, the Interests and any other promissory notes, share certificates, whether for preferred or common stock (including treasury stock), other instruments evidencing any Claims or Interests, and all options, warrants, calls, rights, puts, awards, and commitments, including, without limitation, any agreements purporting to relate to deferred compensation that relate to Interests or options, will be

deemed cancelled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtor under the notes, share certificates, and other agreements and instruments governing such Claims and Interests will be released; *provided, however,* that certain instruments, documents, and credit agreement related to Claims will continue in effect solely for the purpose of allowing the Plan Administrator to make Distributions in accordance with the Plan.  The Holders of or parties to such cancelled notes, share certificates, and other agreements and instruments will have no rights against the Debtor, the Estate, and the Wind-Down Debtor or the Plan Administrator arising from or relating to such notes, share certificates, and other agreements and instruments or the cancellation thereof, except the rights provided under the Plan.

**K.      Approval of Consents and Authorization to Take Acts Necessary to Implement Plan**

93.      This Confirmation Order will constitute all authority required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

94.      This Confirmation Order will authorize any clerk of court for any state court to accept any and all filings filed in furtherance of effectuating the Plan.

**L.      The Releases, Injunction, Exculpation, and Related Provisions under the Plan**

95.      Subject to the modifications set forth in paragraph 107 of this Confirmation Order, the following releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and will be immediately effective on the Effective Date without further

order or action on the part of this Court or any other party: (a) Releases by the Debtor (Section 8.2); (b) Third-Party Release (Section 8.3); (c) Exculpation Provision (Section 8.4); (d) 1125(e) Provision (Section 8.5); and (e) Injunction (Section 8.6).

**M.      Assumption, Rejection, and Cure of Executory Contracts and Unexpired Leases**

96.      The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article IX of the Plan will be, and hereby are, approved in their entirety.

97.      For the avoidance of doubt, on the Effective Date, except as otherwise provided in this Confirmation Order, the Plan, the Plan Supplement, any other Plan Document, the Sale Order, the Bar Date Order, or any other relevant order of the Bankruptcy Court, the Confirmation Order will constitute an order under section 365 of the Bankruptcy Code rejecting all prepetition Executory Contracts or Leases to which the Debtor is a party, to the extent such contracts or leases are Executory Contracts or Leases, on and subject to the occurrence of the Effective Date, unless (a) such contract or lease is expressly assumed in the Plan or Plan Supplement or was previously assumed or assumed and assigned by the Debtor, or (b) is the subject of a pending motion to reject on the Confirmation Date; *provided*, *however*, that as to all policies and agreements giving rise to insurance in favor of the Debtor or its Estate, the Debtor believes that the insurance agreements of the Debtor are not Executory Contracts or Leases and therefore are not subject to assumption or rejection.  To the extent that an insurance policy or agreement is determined to be an Executory Contract or Lease subject to assumption by the Debtor, such executory insurance policy or agreement, as the case may be, is hereby assumed and assigned to, and will vest with, the Wind-Down Debtor.  For the avoidance of doubt, all insurance policies and agreements of the Debtor, and all obligations of any of the Debtor and the other counterparties thereto, will be unaffected by the Plan and will remain enforceable according to their terms and applicable law.

31

**N.     Approval of the Former Manager Settlement**

98.     As demonstrated in the Bogen Declaration, the Former Manager Settlement provides for a comprehensive, consensual resolution of matters involving the Former Managers. The Former Manager Settlement was negotiated in good faith, at arm's-length, and is in the best interest of the Debtor, its Estate, and its stakeholders, and satisfies the standards of section 363(b) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, and is hereby approved. Each of the parties to the Former Manager Settlement are represented by counsel that is recognized as being knowledgeable, competent, and experienced.  The Former Manager Settlement avoids the expense, inconvenience, and delay that would be attendant to resolution, on a contested basis, of the disputes that are resolved under the Former Manager Settlement.  The Former Manager Settlement is essential to the successful implementation of the Plan.

**O.     Provision Regarding CMB**

99.     Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, all direct claims held by CMB against any third party, if any, including, but not limited to, any direct claims against Cobra Defendants and ACSSCE, are not released or enjoined under the Plan or Confirmation Order.

**P.     Provision Regarding the United States**

100.     As to the United States, its agencies or any instrumentalities thereof (collectively, the "United States"), notwithstanding anything contained in the Plan, the Plan Supplement, or this Confirmation Order to the contrary, nothing shall:

(i)      limit or be intended to or be construed to bar the United States from pursuing any police or regulatory action or any criminal action;

(ii)     discharge, release, exculpate, impair or otherwise preclude: (a) any obligation or liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (b) any Claim of the United States arising on or after the Confirmation Date; (c) any liability of the Debtor under police or regulatory statutes or regulations to the United

States as the owner, lessor, lessee or operator of property that such Entity owns, operates or leases after the Effective Date, if any; or (d) any liability owed to the United States, including but not limited to any liabilities arising under the federal environmental, criminal, civil or common law, by any non-Debtor; *provided*, *however*, that the foregoing shall not (1) diminish the scope of any exculpation to which any Person is entitled under section 1125(e) of the Bankruptcy Code or (2) modify the effect of the Claims Bar Date, the Governmental Bar Date or other bar date to the extent applicable;

(iii) enjoin or otherwise bar the United States from asserting or enforcing, outside the Bankruptcy Court, any obligation or liability described in the preceding clause (ii); *provided*, *however*, that the non-bankruptcy rights and defenses of all Entities with respect to (a)–(d) in clause (ii) are likewise fully preserved;

(iv) affect any right of setoff or recoupment of the United States against the Debtor or Wind-Down Debtor; *provided*, *however*, that the rights and defenses (other than any rights or defenses based on language in the Plan or the Confirmation Order that may extinguish or limit setoff or recoupment rights) of the Debtor or Wind-Down Debtor with respect thereto are fully preserved;

(v) authorize the assumption, assignment, sale or other transfer of any federal (a) grants, (b) grant funds, (c) contracts, (d) agreements, (e) awards, (f) task orders, (g) property, (h) intellectual property, (i) patents, (j) leases, (k) certifications, (l) applications, (m) registrations, (n) licenses, (o) permits, (p) covenants, (q) inventory, (r) guarantees, (s) indemnifications, (t) data, (u) records, or (v) any other interests belonging to the United States (collectively, "Federal Interests") without compliance with all terms of the Federal Interests and with all applicable non-bankruptcy law;

(vi) confer exclusive jurisdiction upon the Bankruptcy Court with respect to the Federal Interests, claims, liabilities and Causes of Action, except to the extent set forth in 28 U.S.C. §§ 157 and 1334 (as limited by any other provisions of the United States Code);

(vii) be interpreted to set cure amounts related to any Federal Interests or to require the United States to novate, approve or otherwise consent to the assumption, assignment, sale or other transfer of any Federal Interests;

(viii) constitute or be deemed an approval or consent by the United States;

(ix) waive, alter, or otherwise limit the United States' property rights;

(x) be construed as a compromise or settlement of any liability, Claim, Cause of Action or interest of the United States;

(xi) modify the scope of section 525 of the Bankruptcy Code;

(xii) cause Rejection Damage Claims to have to be filed before the Governmental Bar Date or alter the priority and treatment of such Rejection Damage Claims under the Bankruptcy Code.

33

The United States is not a Releasing Party, as defined in Article 1.126 in the Plan; *provided*, that nothing in the Plan nor this Confirmation Order shall alter any legal or equitable rights or defenses of the Debtor, the Wind-Down Debtor, or any non-Debtor under nonbankruptcy law with respect to any Claim, liability, or Cause of Action relating to the United States.  Further, in the event of an inconsistency or conflict between any provision of the Plan or Plan Supplement and any provision of this Confirmation Order, then, as to the United States, the provisions of this Confirmation Order and federal law shall control.  Nothing in this paragraph impairs the assignment, or the effect of the assignment, of the Debtor's Rights of Way, as authorized by the Court [D.I. 184, ¶26].

**Q.     Further Plan Modifications**

101.     The Plan is hereby modified as follows:

a. The definition of "Exculpated Parties" set forth in section 1.62 of the Plan is hereby amended and replaced in its entirety with the following:

"Exculpated Parties" means, each in their respective capacities as such, (a) the Debtor; and (b) ~~the Related Parties of the Debtor to the extent such Person or Entity is a fiduciary of the Estate (including, without limitation, each of its current and former officers and managers (provided, that a former officer and/or manager will only be an Exculpated Party if such officer or manager served in such capacity as of the Petition Date), principals, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and all other retained Professionals, of the Debtor or the Plan Administrator)~~ **the directors, officers, managers, and Professionals of the Debtor serving on or after the Petition Date**.

b. The following sentence in section 7.8(b) is hereby amended and replaced in its entirety with the following:

On the Effective Date, ~~the authority, power, and incumbency of~~ the persons acting as managers and officers of the Debtor will be deemed to have resigned, solely in their capacities as such, and the Plan Administrator will succeed to the powers of the Debtor's directors, officers, and managers.

c. Section 8.4 is hereby amended and replaced in its entirety with the following:

Notwithstanding anything to the contrary herein, effective as of the Effective Date, the Exculpated Parties will neither have nor incur, and each Exculpated Party is released and exculpated from, any liability to any Entity for any claims or Causes of Action

~~arising prior to or on the Effective Date (including prior to the Petition Date)~~ for any act taken or omitted to be taken **between the Petition Date and the Effective Date (inclusive of both such dates)** in connection with, or related to, preparing and filing the Chapter 11 Case, or formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the confirmation or consummation of the Sale Transaction or the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition **and pre-Effective Date** act taken or omitted to be taken in connection with the Chapter 11 Case, the Investigation, the Disclosure Statement, consummation of the Wind-Down, the Sale Transaction(s), if any, or confirmation or consummation of the Plan, except for actions **or omissions** determined by Final Order to have constituted actual fraud**, willful misconduct,** or gross negligence, but in all respects ~~such Entities~~ the **Exculpated Parties** will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon consummation of the Plan will be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

d.  Section 8.6 is hereby amended and replaced in its entirety with the following:

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims against or Interests in the Debtor that have been released, satisfied, or are subject to exculpation are **(a)** permanently enjoined, from and after the Effective Date from taking any of the following actions against, as applicable, ~~the Debtor, the Wind-Down Debtor,~~ the Exculpated Parties, the Released Parties, the 1125(e) Parties, or the Plan Administrator, or the property to be distributed under this Plan **and (b) enjoined from and after the Effective Date through the date of the final distributions under the Plan from taking any of the following actions against the Wind-Down Debtor**: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) on account of or in connection with or with respect to any such Claim or Interest; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order on account of or in connection with or with respect to any such Claim or Interest; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest; (iv) asserting any right of setoff, directly or indirectly, on account of or in connection with or with respect to any such Claim or Interest, except as contemplated or allowed by this Plan, the Sale Order [D.I. 184], or pursuant to a timely filed Proof of Claim (for the avoidance of doubt, nothing herein shall enjoin or otherwise prohibit any Governmental Unit from filing Proof(s) of Claim

35

by the Governmental Bar Date); and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their Related Parties will be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. ~~Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions, treatment, or reinstatement of such Claim or Interest, as applicable, pursuant to the Plan will be deemed to have consented to the injunction provisions set forth in Section 8.6 hereof.~~ For the avoidance of doubt, the injunction provided for in this section does not affect CMB or any CMB litigation. Notwithstanding anything herein to the contrary, pursuant to section 1141(d)(3) of the Bankruptcy Code, the Debtor shall not receive a discharge.

**R.      Release of Liens**

102.     The release provisions of Section 8.1 of the Plan are approved.

**S.      Effective Date Notice**

103.     In accordance with Bankruptcy Rules 2002 and 3020(c), the Debtor will cause to be served a notice of the entry of this Confirmation Order and occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (the "Effective Date Notice"), upon all parties listed in the creditor matrix maintained by Epiq Corporate Restructuring, LLC no later than two (2) business days after the Effective Date.

**T.      Administrative Claims Bar Date**

104.     In accordance with the Plan and except as otherwise set forth herein, requests for payment of Administrative Claims (other than requests for payment of Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code) must be filed with the Court no later than forty-five (45) days after the Effective Date.  Unless otherwise ordered by the Court, holders of Administrative Claims that do not file and serve such Administrative Claims by the Administrative Claims Bar Date will be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or its property.  Nothing in this Confirmation Order or the Plan extends any deadline for the filing of any claims established in any previously entered order of the Court,

including the *Order (I) Establishing Deadlines for Filing Proofs of Claim, Including Section 503(b)(9) Claims, (II) Approving the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [D.I. 122].

**U.      Section 1146 Exemption**

105.      To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan or this Confirmation Order will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents will forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents under such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**V.      Preservation of Causes of Action**

106.      Except as otherwise provided in the Plan, including the Plan Supplement, or this Confirmation Order or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, the Wind-Down Debtor and/or the Plan Administrator may enforce all rights to commence and pursue, as appropriate, any and all such Retained Actions, whether arising prior to or after the Petition Date, and the Wind-Down Debtor's and/or the Plan Administrator's rights to commence, prosecute, or settle any such Retained Actions will be preserved notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date.

**W.      Effectiveness of All Actions**

107.      Except as set forth in the Plan, all actions authorized to be taken under the Plan will be effective on, before, or after the Effective Date under this Confirmation Order, without further

application to, or order of the Court, or further action by the Debtor, the Wind-Down Debtor, and/or the Plan Administrator and their respective managers, officers, or equity holders, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or equity holders.

## X.   Binding Effect

108.   On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and this Confirmation Order will be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims and Interests, and their respective successors and assigns, including, but not limited to, the Wind-Down Debtor and the Plan Administrator.

## Y.   Asset Sale Rights, Claims, and Obligations

109.   Nothing in this Confirmation Order or the Plan will act as a release of any obligation of any party, or any Claim arising out of, the Sale Transaction or any related document, or as a waiver, relinquishment, or release of any right held by any of the parties to Sale Transaction.

## Z.   Professional Compensation and Reimbursement Claims

110.   Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Wind-Down Debtor will be authorized, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, to pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation and consummation of the Plan incurred by the Wind-Down Debtor.  From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Wind-Down Debtor, may employ and pay any Professional in the ordinary

course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

## AA.    Authorization to Consummate

111.    The Debtor is authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction of the conditions precedent to Consummation set forth in Article XI of the Plan.  On the Effective Date, the Plan will be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

## BB.    Injunctions and Automatic Stay

112.    Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in this chapter 11 case under sections 105 or 362 of the Bankruptcy Code or any order of the Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) will remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Confirmation Order will remain in full force and effect in accordance with their terms.

## CC.    Effect of Nonoccurrence of Conditions to the Effective Date

113.    If the Effective Date does not occur, the Debtor reserves all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated and that this Plan be null and void in all respects or seeking such other and further relief as the Debtor may determine is appropriate under the circumstances.

## DD.    Reports

114.    After the Effective Date, the Debtor has no obligation to File with the Court or serve on any parties reports that the Debtor was obligated to file under the Bankruptcy Code or a prior order of the Court, including monthly operating reports, ordinary course professional reports, and monthly or quarterly reports for Professionals; *provided, however*, that the Debtor, the Wind-

Down Debtor, and the Plan Administrator will comply with the U.S. Trustee's quarterly reporting requirements until the chapter 11 case is closed.

**EE.     Effect of Conflict between Plan and Confirmation Order**

115.    Except as set forth in the Plan and the Confirmation Order, to the extent that any provision of any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, the Plan will govern and control. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order will control.

**FF.     Retention of Jurisdiction**

116.    The Court retains jurisdiction over this chapter 11 case and all matters arising out of or related to this chapter 11 case and the Plan.

**GG.    Waiver of 14-Day Stay**

117.    Notwithstanding any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062, and 9014) to the contrary, this Confirmation Order is effective immediately upon entry and not subject to any stay.

**HH.    Final Order**

118.    This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

Dated: July 8th, 2026
Wilmington, Delaware

J. KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE